# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **MARIA GUADALUPE AMADOR,** | § | **Civil Action No. _____** |
| **Individually and on behalf** | § | |
| **of all others similarly situated,** | § | |
| | § | |
| *Plaintiff,* | § | **JURY TRIAL DEMANDED** |
| | § | |
| **v.** | § | |
| | § | |
| **KEMPER CORPORATION,** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. § 216(b)** |
| *Defendant.* | § | |
| | § | **CLASS ACTION PURSUANT TO** |
| | § | **FED. R. CIV. P. 23(b)** |
| | § | |

---

## PLAINTIFF'S ORIGINAL COLLECTIVE/CLASS ACTION COMPLAINT

---

Plaintiff, Maria Guadalupe Amador, brings this action against Kemper Corporation ("Kemper" or "Defendant") individually and on behalf of all current and former hourly call-center employees (hereinafter "Plaintiff and the Putative Class Members" or "Plaintiff and the FLSA Collective Members") who worked for Kemper, at any time during the relevant statute of limitations, through the final disposition of this matter, to recover compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 216(b) ("FLSA"), and Texas common law.

Plaintiff's FLSA claims are asserted as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), while the additional state-law claims are asserted as class actions under Federal Rule of Civil Procedure 23. The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

# I.
# OVERVIEW

1.      This is a collective action to recover overtime wages, liquidated damages and other applicable penalties brought pursuant to the FLSA and a class action pursuant to the state laws of Texas under FED. R. CIV. P. 23 to recover unpaid straight time wages and other damages allowed by law.

2.      Plaintiff and the Putative Class Members are those similarly situated persons who have worked for Kemper in call centers throughout the United States at any time during the relevant time period(s) and have not been paid for all hours worked or the proper amount of overtime in violation of federal law.

3.      Specifically, Kemper has enforced a uniform company-wide policy wherein it improperly required its non-exempt hourly call-center employees—Plaintiff and the Putative Class Members—to perform work off-the-clock and without pay in violation of federal law.

4.      Kemper's illegal company-wide policy has caused Plaintiff and the Putative Class Members to have hours worked that were not compensated and further created a miscalculation of their regular rate(s) of pay for purposes of calculating their overtime compensation each workweek.

5.      Although Plaintiff and the Putative Class Members routinely worked (and work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6.       Kemper knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members for all hours worked and the proper amount of overtime each workweek on a routine and regular basis during the relevant time period.

7.      Plaintiff and the Putative Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA.

8.      Plaintiff and the Putative Class Members seek to recover all unpaid overtime, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid wages and other damages owed under the state laws of Texas as a class action pursuant to Federal Rule of Civil Procedure 23.

9.      Plaintiff prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

10.     Plaintiff also prays that the Rule 23 class is certified as defined herein, and that Plaintiff be named as Class Representative of the Texas Class.

## II.
## THE PARTIES

11.     Plaintiff Maria Guadalupe Amador ("Amador") was employed by Kemper in McAllen, Texas during the relevant time period(s). Plaintiff Amador did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek.[1]

12.     The FLSA Collective Members are those current and former call-center employees who were employed by Kemper anywhere in the United States, at any time from October 19, 2018, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Amador worked and was paid.

13.     The Texas Class Members are those current and former hourly call-center employees who were employed by Kemper in Texas, at any time from October 19, 2017, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Amador worked and was paid.

---

[1] The written consent of Maria Guadalupe Amador is hereby attached as Exhibit "A."

14.     Defendant Kemper Corporation ("Kemper") is a foreign corporation with its principal place of business in Chicago, Illinois, and may be served with process through its registered agent, **C T Corporation System, 208 S LaSalle St., Suite 814, Chicago, Illinois 60604**.

### III.
### JURISDICTION & VENUE

15.     This Court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201, *et seq.*

16.     This Court has supplemental jurisdiction over the additional state law claims pursuant to 28 U.S.C. § 1367.

17.     On information and belief, this Court additionally maintains original jurisdiction over the state-law claims pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d), 1453, and 1711–1715 ("CAFA").

18.     This Court has personal jurisdiction over Defendant Kemper because Kemper maintains its principal place of business and company headquarters in this District.

19.     Venue is proper in the Northern District of Illinois because Kemper resides in this District.

20.     Specifically, Kemper "resides" at 200 E. Randolph St., Suite 3300 Chicago, Illinois 60601, which is located in this District.

21.     Venue is therefore proper in this Court pursuant to 28 U.S.C. § 1391(b).

### IV.
### ADDITIONAL FACTS

**Kemper and the Kemper Brands**

22.     Kemper is "one of the nation's leading insurers."[2]  With approximately $15 billion in assets, Kemper provides insurance for home, auto, life, health, and valuables, through its auto,

---

[2] https://www.kemper.com/about-kemper/quick-facts.

personal insurance, life, and health brands.[3] Through its brands, Kemper is licensed to sell insurance in all 50 states and the District of Columbia.[4]

23.     Collectively, under the Kemper name, Kemper services over 6.6 million policies, is represented by more than 30,000 agents and brokers, and employs "approximately 10,000 associates dedicated to meeting the ever-changing needs of its customers."[5]

24.     Upon information and belief, despite Kemper's brands' separate entity status, Kemper's business is a single integrated enterprise with a centralized, top-down operation controlled by Kemper. As a single integrated enterprise, Kemper offers and sells its insurance products directly and in conjunction with its brands.

25.     Upon information and belief, Kemper operates its enterprise out of its headquarters in Chicago, Illinois, and is controlled by the Kemper Board of Directors.

26.     Upon information and belief, Kemper maintains business, financial, and employment records at its Illinois headquarters for the Kemper family of companies.

27.     In its filings with the U.S. Securities and Exchange Commission ("SEC"), Kemper reports its financials on a consolidated basis with its brands as combined companies.[6]

28.     Upon information and belief, Kemper develops common tools and procedures at its Illinois headquarters to be used by the Kemper brands throughout the country. Indeed, Kemper determined Plaintiff's and Putative Class Members' rate and method of compensation.

---

[3] https://investors.kemper.com/corporate-overview/corporate-profile/default.aspx; https://www.kemper.com/wps/portal/Kemper/Home/AboutKemper.

[4] *Id.*

[5] https://www.kemper.com/about-kemper.

[6] https://investors.kemper.com/sec-filings/documents/default.aspx.

29.     Upon information and belief, Kemper determines personnel placement, the key terms and conditions of Plaintiff's and Putative Class Members' work and administers training and job duties used throughout its brands.

30.     Upon information and belief, Kemper maintained supervision, control, oversight, and direction over Plaintiff and the Putative Class Members, including conditions of employment and promulgation and enforcement of policies affecting the payment of wages for overtime compensation. Indeed, Plaintiff and the Putative Class Members must obey and follow policies issued by Kemper or may be subject to termination by Kemper.

31.     The unlawful acts alleged in this Complaint were committed by Kemper and/or Kemper's agents, officers, employees, or representatives, while actively engaging in the management of Kemper's business or affairs and with the authorization of Kemper.

32.     Based on the totality of the circumstances, Kemper is therefore Plaintiff and the Putative Class Members' employer pursuant to the FLSA and Texas common law.

**Plaintiff and the Putative Class Members**

33.     Plaintiff Amador was employed by Kemper as a Customer Service Representative in Texas from approximately May 2018 until December 2019.

34.     Plaintiff and the Putative Class Members' job duties consisted of answering a high volume of phone calls from brokers and insureds; reviewing policy details and billing history; taking payments via phone, fax, or online from Kemper customers; answering Kemper's customers' inquiries; and generally assisting Kemper's customers.

35.     Plaintiff and the Putative Class Members are non-exempt employees that were (and continue to be) paid by the hour.

36.     Plaintiff and the Putative Class Members typically worked (and continue to work) approximately forty (40) "on-the-clock" hours per week.

37.     In addition to their forty (40) "on-the-clock" hours, Plaintiff and the Putative Class Members often worked (and continue to work) up to two and one half (2.5) "off-the-clock" hours per week for which they were not compensated.

38.     Kemper has employed other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

39.     Kemper is aware of its obligation to pay for all hours worked and the proper amount of overtime for all hours worked over forty (40) but has failed to do so.

40.     Because Kemper did not pay Plaintiff and the Putative Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Kemper's pay policies and practices violate the FLSA and the state laws alleged herein.

**Unpaid Start-Up Time**

41.     Plaintiff and the Putative Class Members were not (and continue to not be) compensated for all the hours they worked for Kemper as a result of Kemper's corporate policy and practice of requiring all call-center employees to be ready to take their first phone call the moment their official shift starts.

42.     Specifically, Plaintiff and the Putative Class Members have been required to start and log into their computer, open multiple different Kemper computer programs, log in to each Kemper program, and ensure that each Kemper program is running correctly in order to take their first phone call, which comes in as soon as their official shift starts. This process can take up to thirty (30) minutes or longer.

43.     If Plaintiff and the Putative Class Members are not ready and on the phone at shift start, they can be (and often are) subject to discipline.

44.     If Plaintiff and the Putative Class Members clock in prior to their shift start time, they are also subject to discipline.

45.     Therefore, the only way to be ready on time, and avoid discipline, is to prepare the computer "off-the-clock" and without pay.

46.     Although this start-up time is necessary and integral to their job duties, Plaintiff and the Putative Class Members have not been compensated for this time.

47.     Kemper required Plaintiff and the Putative Class Members to be ready to accept their first customer call the moment the employee's official shift starts. Kemper also required Plaintiff and the Putative Class Members to log on and have all the requisite computer programs up and running before their first phone call at the start of their official shift. As such, Kemper required (and continues to require) that Plaintiff and the Putative Class Members perform these start-up tasks "off-the-clock" before their official shift begins.

**Unpaid Work During Meal Period Breaks**

48.     Kemper provides Plaintiff and the Putative Class Members with one unpaid 30-minute meal break each day.

49.     However, Kemper requires Plaintiff and the Putative Class Members to perform "off-the-clock" work during their unpaid meal break.

50.     Plaintiff and the Putative Class are required to stay on the clock and on call until the minute their meal break begins, clock out, then log out of the phone system or otherwise go into an aux mode, and then log off their computer prior to leaving their desk for their meal break.

51.     Plaintiff and the Putative Class Members are required to log back into their computer, perform a restart process, log back into the phone system, then clock in, and be back on the phone right at the moment their meal break ends.

52.     The log off process used prior to taking a meal break can take one (1) to three (3) minutes.

53. The log in process used after returning from a meal break can take one (1) to three (3) minutes.

54. This lengthy log off and log in procedure had to be performed during Plaintiff and the Putative Class Members' meal break per Kemper's policy.

55. Because of this lengthy log off and log in procedure, Plaintiff and the Putative Class Members were (and are) required to work through 30-minute meal break period and were not completely relieved of their duties for the thirty (30) minute break.

56. Additionally, during shifts with higher call volumes, Plaintiff and the Putative Class Members were (and are) required to work through their 30-minute meal break period and were not completely relieved of their duties for the thirty (30) minute break, or they may be subject to discipline for not being in "adherence."

57. Regardless of whether Plaintiff and the Putative Class Members worked during their 30-minute meal break period, Kemper's policy is to deduct thirty (30) minutes from Plaintiff's and the Putative Class Members' paycheck for each day worked.

58. Thus, Plaintiff and the Putative Class Members were not paid for all breaks lasting less than thirty (30) minutes.

**Unpaid Re-Boot Time and Technical Downtime**

59. Further, Plaintiff and the Putative Class Members' computers crashed multiple times each week and required Plaintiffs and the Putative Class Members to reset them, which took ten (10) minutes or more each time.

60. Plaintiff and the Putative Class Members were also not compensated for the time they worked for Kemper rebooting their computers after they crashed.

61. Plaintiff and the Putative Class Members were also not compensated for the time they worked for Kemper resolving computer issues and failures, system issues and failures, program issues

and failures, equipment issues and failures, and other technical issues or failures, or for the time Kemper engaged them to wait while Kemper attempted to resolve the issues or failures.

62.     Plaintiff and the Putative Class Members frequently experienced computer issues and failures, system issues and failures, program issues and failures, equipment issues and failures, and other technical issues or failures and were also not compensated for the time they worked for Kemper resolving the technical or equipment issues and failures.

63.     Plaintiff and the Putative Class were not compensated for the time they spent waiting, at Kemper's direction, for the technical or equipment issues or failures to be resolved.

64.     Plaintiffs and the Putative Class Members were not compensated for the time Kemper engaged them to wait.

**Unpaid Post-Shift Calls**

65.     Plaintiff and the Putative Class Members were (and still are) not permitted to hang up on customers and must finish every call regardless of how long it takes.

66.     Plaintiff and the Putative Class Members frequently found (and continue to find) themselves handling calls past the end of their shift end time or into their scheduled meal break.

67.     Regardless of the length of the calls, Plaintiff and the Putative Class Members were directed to clock out at the end of their shift before finishing any after call notes that needed to be entered, and then perform a lengthy shut down process.

68.     Because Kemper requires Plaintiff and the Putative Class Members to perform these processes only after they have clocked out, Kemper requires Plaintiff and the Putative Class Members to perform this work "off-the-clock."

**Unpaid Rest Breaks Lasting Twenty Minutes or Less**

69.     In addition, Kemper has also enforced a uniform company-wide policy wherein it improperly required its non-exempt hourly employees—Plaintiff and the Putative Class Members—to clock out for rest breaks lasting twenty (20) minutes or less. *See* 29 C.F.R. § 785.18.

70.     Specifically, Kemper permitted Plaintiff and the Putative Class Members to take two scheduled fifteen-minute breaks each day but required them to clock out for any and all breaks taken outside the two fifteen-minute scheduled breaks.

71.     Additionally, during shifts with higher call volumes, Plaintiff and the Putative Class Members were (and are) required to work through their two scheduled fifteen-minute breaks and were not completely relieved of their duties for the fifteen-minute break, or they may be subject to discipline for not being in "adherence."

**Unpaid Shut Down Time**

72.     Plaintiff and the Putative Class Members were (and still are) required to carefully log out of each of Kemper's programs, and fully shut down their computer after their shift end time.

73.     Kemper trained Plaintiff and the Putative Class Members to clock out after their last call, and then perform a specific computer shut down process, which could take anywhere from three (3) to five (5) minutes each day.

74.     Therefore, Kemper did not pay Plaintiff and the Putative Class Members for their post-shift shut down.

75.     As a result of Kemper's corporate policy and practice of requiring Plaintiff and the Putative Class Members to perform their computer start up tasks off-the-clock before the beginning of their shifts, perform their computer shut down tasks after the end of their shift, perform log-in and log-out processes during their unpaid meal period breaks, clock out for short breaks, and troubleshoot technical and equipment problems and failures off-the-clock without pay, Plaintiff and the Putative

Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

76.     Kemper employed (and continues to employ), other individuals who perform(ed) the same or similar job duties under the same pay provisions as Plaintiff.

77.     Kemper was (and continues to be) aware of its obligation to pay for all hours worked and pay overtime for all hours worked in excess of forty (40) each week to Plaintiff and the Putative Class Members but failed to do so.

78.     Because Kemper did not pay Plaintiff and the Putative Class Members time and a half for all hours worked in excess of forty (40) in a workweek, Kemper's pay policies and practices willfully violate the FLSA.

79.     Because Kemper did not pay Plaintiff and the Putative Class Members for all straight-time hours worked, Kemper's pay policies and practices also violate the state laws of Texas.

**V.**
**CAUSES OF ACTION**

**COUNT ONE**
**(Collective Action Alleging FLSA Violations)**

**A.     FLSA COVERAGE**

80.     All previous paragraphs are incorporated as though fully set forth herein.

81.     The FLSA Collective is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WORKED FOR KEMPER CORPORATION, ANYWHERE IN THE UNITED STATES, AT ANY TIME FROM OCTOBER 19, 2018, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("FLSA Collective" or "FLSA Collective Members").**

82.     At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members have been employees within the meaning of Section 3(e) of the FLSA, 29 U.S.C § 203(e).

83.    At all times hereinafter mentioned, Kemper has been an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

84.    At all times hereinafter mentioned, Kemper has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

85.    During the respective periods of Plaintiff and the FLSA Collective Members' employment by Kemper, these individuals have provided services for Kemper that involved interstate commerce for purposes of the FLSA.

86.    In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members have been engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

87.    Specifically, Plaintiff and the FLSA Collective Members are (or were) non-exempt employees of Kemper who assisted customers throughout the United States. 29 U.S.C. § 203(j).

88.    At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members have been individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206–07.

89.    In violating the FLSA, Kemper acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

90.     The proposed class of similarly situated employees, i.e., putative class members, sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 81.

91.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Kemper.

## B.  FAILURE TO PAY WAGES AND OVERTIME UNDER THE FAIR LABOR STANDARDS ACT

92.     All previous paragraphs are incorporated as though fully set forth herein.

93.     Kemper has violated provisions of Sections 6, 7 and 15 of the FLSA, 29 U.S.C. §§ 206–7, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all of the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

94.     Moreover, Kemper knowingly, willfully, and with reckless disregard carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees for all hours worked and the proper amount of overtime compensation for all hours worked over forth (40) each week. 29 U.S.C. § 255(a).

95.     Kemper knew or should have known its pay practices were in violation of the FLSA.

96.     Kemper is a sophisticated party and employer, and therefore knew (or should have known) its pay policies were in violation of the FLSA.

97.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated employees who trusted Kemper to pay them according to the law.

98.     The decisions and practices by Kemper to not pay for all hours worked or the proper amount of overtime for all hours worked over forty (40) was neither reasonable nor in good faith.

99.     Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid for all hours worked and overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

## C.     COLLECTIVE ACTION ALLEGATIONS

100.     All previous paragraphs are incorporated as though fully set forth herein.

101.     Pursuant to 29 U.S.C. § 216(b), this is a collective action filed on behalf of all of Kemper's employees throughout the United States who are similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

102.     Other similarly situated employees of Kemper have been victimized by Kemper's patterns, practices, and policies, which are in willful violation of the FLSA.

103.     The FLSA Collective Members are defined in Paragraph 81.

104.     Kemper's failure to pay Plaintiff and the FLSA Collective Members for all hours worked and overtime compensation at the rates required by the FLSA results from generally applicable policies and practices of Kemper and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

105.     Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

106.     The specific job titles or precise job requirements of the various FLSA Collective Members do not prevent collective treatment.

107.     All FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be paid for all hours worked and at the proper overtime rate for all hours worked in excess of forty (40) hours per workweek

108.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

109.     Absent a collective action, many members of the proposed FLSA Collective likely will not obtain redress of their injuries and Kemper will retain the proceeds of its violations of the FLSA.

110.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

111.     Accordingly, the FLSA Collective of similarly situated plaintiffs should be certified as defined as in Paragraph 81 and notice should be promptly sent.

## <u>COUNT TWO</u>
### (Class Action Alleging Violations of Texas Common Law)

A.     **VIOLATIONS OF TEXAS COMMON LAW**

112.     Plaintiff incorporates by reference all paragraphs and allegations set forth in the statement of facts of this complaint as though fully and completely set forth herein.

113.     Plaintiff Amador further brings this action pursuant to the equitable theory of *quantum meruit*. *See Artemis Seafood, Inc. v. Butcher's Choice, Inc.*, No. CIV. A. 3:98-0282, 1999 WL 608853, at *3 (N.D. Tex. Aug. 11, 1999) (citing *Schuchart & Assocs. v. Solo Serve Corp.*, 1983 WL 1147, at *23 (W.D. Tex. June 29, 1983)).

114.     The Texas Class is defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO HAVE BEEN EMPLOYED BY KEMPER CORPORATION IN TEXAS, AT ANY TIME FROM OCTOBER 19, 2017, THROUGH THE FINAL DISPOSITION OF THIS MATTER. ("Texas Class" or "Texas Class Members").**

115.     Plaintiff Amador and the Texas Class Members are entitled to recover their unpaid "straight time" or "gap time" wages for services rendered on behalf of Kemper.

116. These claims are independent of Plaintiff Amador's claims for unpaid overtime wages pursuant to the FLSA, and they are therefore not preempted by the FLSA. *See Carman v. Meritage Homes Corp.*, 37 F. Supp. 3d 860, 867 (S.D. Tex. 2014).

117. Plaintiff Amador and the Texas Class Members provided valuable services for Kemper, at Kemper's direction, and with Kemper's acquiescence.

118. Plaintiff Amador and the Texas Class Members conferred a valuable benefit on Kemper because they provided services to Kemper while not on the clock—during their respective computer start-up times, compensable breaks, and after their shifts ended—without compensation.

119. Kemper accepted Plaintiff Amador and the Texas Class Members' services and benefited from their timely dedication to Kemper's policies and adherence to Kemper's schedule.

120. Kemper was aware that Plaintiff Amador and the Texas Class Members expected to be compensated for the services they provided Kemper.

121. Kemper has therefore benefited from services rendered by Plaintiff Amador and the Texas Class Members, and it is inequitable for Kemper to retain the benefit of Plaintiff Amador and the Texas Class Members' services without paying fair value for them.

122. Plaintiff Amador and the Texas Class Members are thus entitled to recover pursuant to the equitable theory of quantum meruit.

**B.     TEXAS CLASS ALLEGATIONS**

123. All previous paragraphs are incorporated as though fully set forth herein.

124. Plaintiff Amador brings her Texas claim as a class action pursuant to Federal Rule of Civil Procedure 23 on behalf of all similarly situated individuals employed by Kemper to work in Texas since October 19, 2017. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004.

125. Class action treatment of the Texas Class Members is appropriate because, as alleged below, all of the Federal Rule of Civil Procedure 23's class action requisites are satisfied.

126. The number of Texas Class Members is so numerous that joinder of all class members is impracticable.

127. The claims alleged by Plaintiff Amador share common issues of law and fact with the claims of the Texas Class Members.

128. Plaintiff Amador is a member of the Texas Class, her claims are typical of the claims of the other Texas Class Members, and she has no interests that are antagonistic to or in conflict with the interests of the other Texas Class Members.

129. Plaintiff Amador and her counsel will fairly and adequately represent the Texas Class Members and their interests.

130. Class certification is appropriate under the Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

131. Accordingly, the Texas Class should be certified as defined in Paragraph 114.

## VI.
## RELIEF SOUGHT

132. Plaintiff respectfully prays for judgment against Kemper as follows:

a. For an Order certifying the FLSA Collective as defined in Paragraph 81 and requiring Kemper to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all putative collective action members;

b. For an Order certifying the Texas Class as defined in Paragraph 114 and designating Plaintiff Amador as the Class Representative of the Texas Class;

c. For an Order approving the form and content of a notice to be sent to all putative FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

d.    For an Order awarding Plaintiff, Opt-In Plaintiffs, and Class Members back wages that have been improperly withheld;

e.    For an Order pursuant to Section 16(b) of the FLSA finding Kemper liable for unpaid back wages due to Plaintiff (and those Collective and Class Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those Collective and Class Members who have joined in the suit);

f.    For an Order pursuant to Texas common law awarding Plaintiff Amador and the Texas Class Members unpaid straight time wages and other damages allowed by law;

g.    For an Order awarding Plaintiff, Opt-In Plaintiffs, and Class Members the costs and expenses of this action;

h.    For an Order awarding Plaintiff, Opt-In Plaintiffs, and Class Members fees;

i.    For an Order awarding Plaintiff, Opt-In Plaintiffs, and Class Members pre-judgment and post-judgment interest at the maximum legal rate;

j.    For an Order awarding Plaintiff a service award as permitted by law;

k.    For an Order compelling the accounting of the books and records of Kemper, at Kemper's own expense; and

l.    For an Order granting such other and further relief as may be necessary and appropriate.

Date:   October 19, 2021                  Respectfully submitted,

**STEPHAN ZOURAS, LLP**

*/s/ Ryan F. Stephan*
Ryan F. Stephan
James B. Zouras
Catherine T. Mitchell
Megan E. Shannon
**STEPHAN ZOURAS, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606

312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
cmitchell@stephanzouras.com
mshannon@stephanzouras.com

**ANDERSON ALEXANDER, PLLC**

By:     /s/ *Clif Alexander*

**Clif Alexander**
Federal I.D. No. 1138436
N.D. Illinois Federal I.D. No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
N.D. Illinois Federal I.D. No. 24045189
austin@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284
team@a2xlaw.com

***Attorneys for Plaintiff and the Putative
Class Members***

## **CERTIFICATE OF SERVICE**

I, the attorney, hereby certify that on October 19, 2021, I filed the attached with the Clerk

of the Court using the electronic filing system which will send such filing to all attorneys of record.

*/s/ Ryan F. Stephan*